# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN, BANKRUPTCY DIVISION

| | |
|---|---|
| **In re:**<br><br>INNOVATIVE COMMUNICATION CORPORATION,<br><br>DEBTOR. | **Chapter 11**<br><br>**Case No. 07-30012 (JKF)** |
| STAN SPRINGEL, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATE OF INNOVATIVE COMMUNICATION CORPORATION,<br><br>PLAINTIFF,<br><br>V.<br><br>GLOBAL BANK OF COMMERCE LIMITED,<br><br>DEFENDANT. | **Adv. Proc. No. 09-03071**<br><br>(All pleadings to be filed in Adv. Proc. No. 08-03047 per the Court's Order) |

### FIRST AMENDED COMPLAINT AGAINST GLOBAL BANK OF COMMERCE LIMITED TO RECOVER PRE-PETITION FRAUDULENT TRANSFERS AND PREFERENTIAL TRANSFERS AND OBJECTION TO CLAIM

Stan Springel, chapter 11 trustee ("Trustee Springel") of the bankruptcy estate of Innovative Communication Corporation ("New ICC"), files this *First Amended Complaint against Global Bank of Commerce Limited to Recover Pre-Petition Fraudulent Transfers and Preferential Transfers and Objection to Claim* (the "Complaint") and in support shows as follows:

### PARTIES

1. Trustee Springel is the chapter 11 trustee of the bankruptcy estate of New ICC (the "New ICC Estate").

2.  Global Bank of Commerce Limited (the "Defendant") is, upon information and belief, a banking organization based in St. John's, Antigua, West Indies with at least one branch located in Christiansted, St. Croix, United States Virgin Islands. The Defendant has previously appeared in this proceeding and therefore can be served with this Complaint through its counsel of record, George Mesires, Ungaretti & Harris LLP, 3500 Three First National Plaza, 70 W. Madison Street, Chicago, Illinois, 60602.

## JURISDICTION AND PROCEDURAL BACKGROUND

3.  This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F), (H), and (O).

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

5.  On July 5, 2007 (the "Petition Date"), Greenlight Capital Qualified, L.P., Greenlight Capital, L.P., and Greenlight Capital Offshore, Ltd. (collectively, the "Greenlight Entities") filed an *Involuntary Petition for Relief* against New ICC, commencing Case No. 07-30012 (JKF). An *Order for Relief* was entered by the Court on September 21, 2007 (DE 60). Trustee Springel was appointed the chapter 11 trustee of New ICC on October 4, 2007 (DE 125).

## THE TRANSFERS

6.  New ICC is a management and holding company that once owned, directly or indirectly, 100% of the common stock of various operating subsidiaries that provide telephone, newspaper, and other services to the citizens of the United States Virgin Islands, British Virgin Islands, surrounding Caribbean locations and portions of France. New ICC is a wholly-owned subsidiary of Emerging Communications, Inc. ("ECI"), which, in turn, is directly and indirectly

owned by Innovative Communication Company, LLC ("ICC-LLC", and together with ECI, the "Parent Debtors").

7.      At all times material, Jeffrey J. Prosser ("Prosser") was an officer and director and control party of New ICC, and the sole member of its ultimate parent company, ICC-LLC. In those capacities, he exercised absolute and unchecked control over New ICC and its subsidiaries. Prosser utilized tens of millions of dollars of operating capital of New ICC, all without board approval, to pay for a lavish lifestyle for himself and his family characterized by multiple residences, private jets, luxury automobiles, and the accumulation of luxury items including wines, fine art, and expensive jewelry.

8.      Soon after the commencement of significant litigation against Prosser and his companies (including a class action for breach of fiduciary duties brought by former public shareholders relating to Prosser's privatization of ECI), placing him at risk of substantial adverse judgments, Prosser began improperly and fraudulently liquidating the capital of New ICC for his own personal benefit and for the personal benefit of insiders, friends and family members. Even as a debtor in bankruptcy,[1] Prosser continued to cause New ICC to pay for personal items and services utilized or possessed by him and/or his family members.

9.      As a result, both before and after the Petition Date, New ICC made payment(s) to or for the benefit of the Defendant (collectively, the "Transfers"), including those identified on **Exhibit A** attached hereto. The aggregate amount of the Transfers is $3,920,260.30 (collectively, the "Funds").

10.     Specifically, in July 2002, Prosser caused New ICC's wholly owned subsidiary, Virgin Islands Telephone Company ("VITELCO") to borrow $3 million from the Defendant

---

[1] On February 10, 2006, the Greenlight Entities filed *Involuntary Petitions for Relief* against ECI, ICC-LLC and Prosser.

(originally, and as subsequently amended, the "Loan").  Prosser then compelled VITELCO and ECI to pledge assets to the Defendant as collateral for the Loan (the "Property").[2]

11. Although VITELCO initially received the Loan proceeds, Prosser directed VITELCO to immediately transfer the $3 million to New ICC.  Prosser then instructed New ICC to apply such funds to Prosser's benefit as a credit against a personal obligation of Prosser to New ICC.  Thereafter, Prosser caused New ICC (not VITELCO) to make all of the payments on the Loan, the net effect being that Prosser got the benefit of the Loan proceeds in the form of a credit against his obligation to New ICC without spending a dime of his own money.  On the other hand, New ICC received nothing in exchange for the credit it was compelled to give Prosser, as New ICC had to repay the Loan to Global Bank.

12. The Defendant and VITELCO, at the behest of and for the benefit of Prosser, amended the Loan on two occasions, once on December 31, 2002 and again on July 12, 2006 (when Prosser and the Parent Debtors were already in involuntary bankruptcy proceedings). Pursuant to the later amendment, suspiciously made on the eve of Trustee Springel's appointment at the Parent Debtors' level, VITELCO amended the existing loan documents to secure another advancement of $1.7 million.  As with the original Loan (to which New ICC was notably not a party), the Anna's Hope Property was again pledged as security for the amended Loan per the direction of Prosser, despite the fact that ECI was already in bankruptcy and there was no Court approval of such pledging of ECI's property.

13. Also as with the original Loan, neither VITELCO nor New ICC received anything of value from Global Bank or Prosser in connection with the amendments, nor did ECI.

---

[2] Such Property includes, but is not limited to, a plot of land located at 143 Estate Anna's Hope, East End Quarter, St. Croix, U.S. Virgin Islands (the "Anna's Hope Property"), previously owned by ECI.

**FIRST AMENDED COMPLAINT AGAINST GLOBAL BANK OF COMMERCE LIMITED TO RECOVER
PRE-PETITION FRAUDULENT TRANSFERS AND PREFERENTIAL TRANSFERS
AND OBJECTION TO CLAIM**                                                                 **Page 4 of 13**
US 1174977v.3

Nonetheless, and, upon information and belief, with Global Bank's full knowledge, New ICC continued to make the payments due Global Bank.

14. ECI's board resolutions of July 12, 2006 authorizing the Anna's Hope Property to be mortgaged expressly state that the Loan proceeds were to be used by VITELCO to purchase a GSM switch. Such a purchase never occurred. Upon information and belief, the Defendant was aware of this false pretense by which the mortgage was secured and further aware that VITELCO would not benefit from the Loan proceeds. Notably, the Loan was never reflected on VITELCO's books and records, the Defendant was not scheduled as a secured creditor on ECI's schedules, and the Defendant did not file a proof of claim in the ECI bankruptcy case.

15. New ICC's Board of Directors did not consider or approve the Loan as New ICC was never a party to the Loan, despite making all payments on same. Upon information and belief, Trustee Springel asserts that the Defendant cooperated with Prosser in structuring the Loan to appear as an obligation of VITELCO although the Defendant was aware that the Loan was for Prosser's sole and personal benefit. Further, the Defendant knowingly accepted payments on the Loan from New ICC even though the Loan documents reflected VITELCO as the borrower and the Loan benefitted only Prosser.

16. The transfer of New ICC's operating capital to or for the benefit of the Defendant was made by New ICC – at Prosser's direction – with an actual intent to hinder, delay, or defraud present or future creditors of New ICC. Since at all times material Prosser was a control person of New ICC, his intent in causing New ICC to pay what was really his personal obligation to the detriment of New ICC's own creditors can be imputed to New ICC.

17. The Defendant did not provide any consideration to New ICC in exchange for the Transfers.

18. Further, the Defendant knew, or should have known, the actual source of the Funds. Defendant willingly assisted and conspired with Prosser in this scheme to cause New ICC to re-pay a loan that was solely for Prosser's personal benefit, which resulted in significant damages to New ICC.

19. At all times material, creditors had claims against New ICC. Further, numerous creditors, including but not limited to the Greenlight Entities, the Rural Telephone Finance Cooperative (the "RTFC"), Comstar, Inc. and other creditors identified on the claims register, currently hold significant allowable secured and unsecured claims against the New ICC Estate under Bankruptcy Code § 502, which claims remain unpaid.

## CAUSES OF ACTION

*Count One: To Recover Fraudulent Transfers Made by New ICC to or for the Benefit of the Defendant under Section 548(a)(1)(A) of the Bankruptcy Code*

20. Paragraphs 1 through 19 are incorporated herein by reference.

21. Within two years preceding the Petition Date, the Defendant received or was the beneficiary of certain Transfers.

22. Each of those Transfers constituted transfers of interests in property of New ICC.

23. All of those Transfers were made with actual intent to hinder, delay or defraud a then-present or future creditor of New ICC.

24. All of those Transfers are recoverable by Trustee Springel for the New ICC Estate under section 548(a)(1)(A) of the Bankruptcy Code.

25. Pursuant to section 550(a) of the Bankruptcy Code, Trustee Springel may recover transfers from the initial, immediate, or mediate transferee, as well as from the entity for whose benefit the transfers were made. Accordingly, Trustee Springel may recover from the Defendant each of those Transfers, the value thereof, or any and all proceeds, monies or properties

Case 3:09-ap-03071-MFW    Doc 35    Filed 07/19/12    Entered 07/19/12 12:01:02    Desc
Main Document    Page 7 of 13

attributable to same.

*Count Two: To Recover Fraudulent Transfers Made by New ICC to or for*
*the Benefit of the Defendant under Section 548(a)(1)(B) of the Bankruptcy Code*

26. Paragraphs 1 through 25 are incorporated herein by reference.

27. Within two years preceding the Petition Date, the Defendant received or was the beneficiary of certain Transfers.

28. Each of those Transfers constituted transfers of interests in property of New ICC.

29. New ICC received less than reasonably equivalent value in exchange for those Transfers.

30. New ICC (a) was insolvent or became insolvent as a result of each of those Transfers; (b) at the time of each of those Transfers, was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with New ICC was an unreasonably small amount of capital; and/or (c) at the time of each of those Transfers, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

31. Each of those Transfers is recoverable by Trustee Springel for the New ICC Estate under section 548(a)(1)(B) of the Bankruptcy Code.

32. Pursuant to section 550(a) of the Bankruptcy Code, Trustee Springel may recover transfers from the initial, immediate, or mediate transferee, as well as from the entity for whose benefit the transfers were made. Accordingly, Trustee Springel may recover from the Defendant each of those Transfers, the value thereof, or any and all proceeds, monies or properties attributable to same.

**FIRST AMENDED COMPLAINT AGAINST GLOBAL BANK OF COMMERCE LIMITED TO RECOVER**
**PRE-PETITION FRAUDULENT TRANSFERS AND PREFERENTIAL TRANSFERS**
**AND OBJECTION TO CLAIM**                                              **Page 7 of 13**
US 1174977v.3

*Count Three: To Recover Fraudulent Transfers Made by New ICC to or for the Benefit of the Defendant under Section 544 of the Bankruptcy Code and USVI Law[3]*

33. Paragraphs 1 through 32 are incorporated herein by reference.

34. New ICC made certain Transfers prior to the Petition Date, and the Defendant received or was a beneficiary of those Transfers.

35. Each of those Transfers constituted transfers of interests in property of New ICC.

36. At all relevant times, there were and are one or more creditors who held or hold a claim or claims against New ICC. Each of those creditors hold unsecured claims against the New ICC Estate that are allowable under Bankruptcy Code § 502, or are not so allowable only on account of Bankruptcy Code § 502(e).

37. Each of those Transfers was made without fair consideration, and New ICC was insolvent at the time of each of those Transfers or was rendered insolvent as a result of each of those Transfers.

38. Each of those Transfers was made without fair consideration and while New ICC was engaged or was about to engage in a business or transaction for which the property remaining with New ICC after each of those Transfers was an unreasonably small amount of capital.

39. At the time that each of those Transfers was made, New ICC intended or believed that it would incur debts beyond its ability to pay as they matured.

---

[3] V.I. Code tit. 28, §201 *et seq.* Trustee Springel maintains that the statutes of limitations for the claims and causes of action asserted in this action pursuant to the applicable laws of the U.S. Virgin Islands have not expired. However, even if the applicable territorial statutes of limitation might otherwise have expired, the Virgin Islands discovery rule provides that in an action upon a new promise, fraud, or mistake, "the limitation shall be deemed to commence only from the making of the new promise or *the discovery of the fraud or mistake*." 5 V.I.C. § 32(c) (emphasis added). Accordingly, the discovery rule operates to toll the running of limitations.

40. Each of those Transfers was made with actual intent to hinder, delay, or defraud then-present or future creditors.

41. Accordingly, each of those Transfers is avoidable by Trustee Springel for the New ICC Estate under all applicable laws of the United States Virgin Islands.

42. Pursuant to section 550(a) of the Bankruptcy Code, Trustee Springel may recover transfers from the initial, immediate, or mediate transferee, as well as from the entity for whose benefit the transfers were made. Accordingly, Trustee Springel may recover from the Defendant each of those Transfers, the value thereof, or any and all proceeds, monies or properties attributable to same.

*Count Four: Alternatively, to Recover Preferential*
*Transfers pursuant to Bankruptcy Code § 547*

43. Paragraphs 1 through 42 are incorporated herein by reference.

44. The Transfers were transfers of interests of New ICC in the Funds.

45. The Transfers were made to or for the benefit of the Defendant.

46. Certain of the Transfers were made for or on account of an alleged antecedent debt owed by New ICC before the Transfers were made.

47. Those Transfers were made while New ICC was insolvent.

48. Those Transfers were made on or within 90 days before the Petition Date.

49. Those Transfers enabled the Defendant to receive more than the Defendant would receive if (i) the bankruptcy case was a case under chapter 7 of this title; (ii) the Transfers had not been made; and (iii) the Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

50. Therefore, Trustee Springel is entitled to the entry of an order avoiding the Transfers and providing for all other related relief as is necessary and proper.

*Count Five: To Recover Unauthorized Post-Petition Transfers Made by New ICC to or for the Benefit of the Defendant under Section 549 of the Bankruptcy Code*

51. Paragraphs 1 through 50 are incorporated herein by reference.

52. New ICC made certain Transfers on or after the Petition Date, and the Defendant received or was a beneficiary of those Transfers.

53. Those Transfers were (a) authorized only under Bankruptcy Code §§ 303(f) or 542(c); or (b) not authorized under the Bankruptcy Code or by the Court.

54. The Defendant did not provide New ICC value in exchange for the Transfers.

55. Pursuant to section 550(a) of the Bankruptcy Code, Trustee Springel may recover transfers from the initial, immediate, or mediate transferee, as well as from the entity for whose benefit the transfers were made. Accordingly, Trustee Springel may recover from the Defendant those Transfers that were made on or after the Petition Date, the value thereof, or any and all proceeds, monies or properties attributable to same.

*Count Six: Civil Conspiracy to Commit Fraud*

56. Paragraphs 1 through 55 are incorporated herein by reference.

57. Pleading further, or in the alternative, the Defendant engaged in a conspiracy to commit fraud. Defendant acted in concert with one or more persons or entities. Specifically, Defendant, along with Prosser, agreed to act together to accomplish an unlawful purpose, namely, the commission of fraud upon New ICC.

58. Defendant, along with Prosser, combined to use unlawful means like fraud to accomplish the goal of the conspiracy, which resulted in significant damages and financial injuries upon the targets of their conspiracy, including New ICC.

59. Specifically, Defendant reached agreement with Prosser to defraud New ICC, and then engaged in one or more of the overt acts described above with the intent and effect of furthering that conspiracy. Further, as a co-conspirator, Defendant is jointly and severally liable for any and all acts done by Prosser in furtherance of the illegal combination.

*Count Seven: To Disallow Claims Asserted by the
Defendant pursuant to Section 502(d) of the Bankruptcy Code*

60. Paragraphs 1 through 59 are incorporated herein by reference.

61. The Defendant is the initial, immediate, or mediate transferee of each of the Transfers or the party for whose benefit the Transfers were made. Those Transfers are avoidable by Trustee Springel for the New ICC Estate and should be avoided pursuant to sections 544, 547, and 548 of the Bankruptcy Code. Trustee Springel is entitled to a recovery on account of each of the Transfers pursuant to section 550(a) of the Bankruptcy Code.

62. Accordingly, Trustee Springel is entitled to the entry of an order disallowing any claim of the Defendant against the New ICC Estate, including disallowing any purported liens of the Defendant on the Property and an order that the Defendant is not entitled to any distribution out of any sales of the Property, pursuant to section 502(d) of the Bankruptcy Code.

*Count Eight: To Recover from the Defendant Attorney's Fees, Interest, and Costs*

63. Paragraphs 1 through 62 are incorporated herein by reference.

64. Trustee Springel is entitled to recover attorney's fees and costs and to an award of interest from the dates on which the Defendant received or became a beneficiary of each of the

Transfers pursuant to sections 544, 547, 548 and 550 of the Bankruptcy Code, other federal laws, state law, and other applicable law.

## RESERVATION OF RIGHTS

65. Trustee Springel expressly reserves his right to pursue other causes of action against the Defendant and any other party after further investigation.

## PRAYER

Trustee Springel respectfully requests that the Court (i) avoid the Transfers; (ii) enter a judgment against the Defendant entitling Trustee Springel to recover the Funds, or the value of the Funds, and awarding all other related relief to which Trustee Springel is entitled, including but not limited to, damages for common law fraud and interest as of the date of the Transfers and the costs of this Adversary Proceeding; (iii) disallow any claim of the Defendant against New ICC, including disallowing any purported liens of the Defendant on the Property and ordering that the Defendant is not entitled to any distribution out of any sales of the Property; and (iv) grant him any other and further relief to which he is justly entitled.

Dated: July 18, 2012

By:    */s/ James J. Lee*
Daniel C. Stewart, SBT #19206500
James J. Lee, SBT #12074550
Michaela C. Crocker, SBT #24031985
**VINSON & ELKINS L.L.P.**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 214.220.7700
Fax: 214.220.7716

**COUNSEL FOR STAN SPRINGEL, CHAPTER 11 TRUSTEE**

- and –

        Benjamin A. Currence, Esq.
**LAW OFFICES OF BENJAMIN A. CURRENCE**
5045 Norre Gade, Ste. 2
P.O. Box 6143
St. Thomas, VI 00804-6143
Tel: (340) 775-3434
Fax: (340) 774-1001

**LOCAL COUNSEL FOR STAN SPRINGEL, CHAPTER 11 TRUSTEE**